1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

   PRAXIS ENERGY AGENTS PTE LTD,

4                                           : CIVIL ACTION
               Plaintiff,                   :

5   v                                       :
                                            :

6   M/V PEBBLE BEACH, its engine,           :
    tackle, apparel and freights,           :

7                                           : NO. 17-559-LPS
               Defendant in rem.

8                              - - -

9                         Wilmington, Delaware
                          Monday, December 18, 2017

10                        *Telephone Conference*

11                             - - -

12   BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge

13                             - - -

14   APPEARANCES:

15

                   YOUNG CONAWAY STARGATT & TAYLOR, LLP
16                 BY:  TIMOTHY JAY HOUSEAL, ESQ.

17                     and

18                 SIMMS SHOWER, LLP
                   BY:  J. STEPHEN SIMMS, EQ.
19                     (Baltimore, Maryland)

20                     Counsel for Plaintiff

21

                   PALMER BIEZUP & HENDERSON, LLP
22                 BY:  MICHAEL B. McCAULEY, ESQ.

23                     and

24

25                                 Brian P. Gaffigan
                                   Registered Merit Reporter

1    APPEARANCES:   (Continued)

2

3                   PALMER BIEZUP & HENDERSON, LLP
                    BY:   KEVIN G. O'DONOVAN, ESQ.
4                         (Philadelphia, Pennsylvania)

5                         Counsel for Claimant Sithonia Shipholding SA

6

7

8

9

10

11                              - oOo -

12                      P R O C E E D I N G S

13              (REPORTER'S NOTE:   The following telephone

14   conference was held in chambers, beginning at 4:31 p.m.)

15              THE COURT:   Good afternoon, everybody.   This is

16   Judge Stark.   Who is there, please?

17              MR. O'DONOVAN:   Good afternoon.

18              MR. SIMMS:   Good afternoon, Your Honor.

19              MR. HOUSEAL:   Good afternoon, Your Honor.

20              THE COURT:   All right.   Who is there for the

21   plaintiff, please?

22              MR. SIMMS:   Your Honor, Steve Simms in Baltimore

23   and Tim Houseal in Wilmington.

24              THE COURT:   Okay.   For defendant?

25              MR. McCAULEY:   Your Honor, it's Michael

1    McCauley, and lead counsel, Frank DeGiulio and Kevin

2    O'Donovan.

3              THE COURT:  Okay.

4              MR. O'DONOVAN:  Just Kevin O'Donovan.  Thank

5    you.

6              MR. McCAULEY:  I'm sorry.  Just Kevin.  I'm

7    sorry.

8              THE COURT:  Is that everybody then?

9              MR. McCAULEY:  Yes, sir.

10             MR. HOUSEAL:  Yes.

11             THE COURT:  Okay.  Thank you.  I have my court

12   reporter here with me.  And for the record, it is our case

13   of Praxis Energy Agents PTE Limited versus MB Pebble Beach,

14   our Civil Action No. 17-559-LPS.  And I set this call after

15   receiving the December 4th letter.  We're here to talk about

16   the demand for countersecurity and also to talk about

17   whether and, if so, what the briefing schedule should be on

18   Praxis's motion for summary judgment.  But let's start with

19   the demand for countersecurity, and we'll hear from

20   defendant on that, please.

21             MR. O'DONOVAN:  Your Honor, it's Kevin

22   O'Donovan.  Thank you for taking the call.

23             I think essentially we had filed this motion

24   back in June, and it is our position that the rule very

25   clearly states that nothing else in this case shall take

1 place until countersecurity has been posted.

2         It seems to us very clear there are only two

3 conditions for countersecurity and both of those conditions

4 are met here:

5         The first is:  Have we posted security?

6         The answer to that is yes.

7         And the second portion of the test is:  Does the

8 current claim, I mean does the countersecurity claim arise

9 out of the same transaction or occurrence?

10         And essentially everything that is happening

11 here arises out of the contract for the supply of bunkers

12 to this ship in Russia, both our countersecurity and the

13 original arrest.  Therefore, it is our position everything,

14 both requirements of the rule have been met and therefore

15 until Praxis posts countersecurity, the case shouldn't go

16 forward.

17         And I think it is also important, Judge, there

18 are a lot of arguments that are being made here that go to

19 the merits of whether or not we're entitled to countersecurity.

20 That is not the issue before the Court right now.  This is,

21 the rule is very simple, and as long as those two conditions

22 are met, then countersecurity should be required.

23         After the countersecurity has been posted, then

24 we can get into an argument on the merits just as with the

25 arrest.  The ship was arrested.  We posted countersecurity.

1    I mean we posted security and then we're going to get to the

2    merits of that claim but only after the countersecurity has

3    been posted.

4                    THE COURT:  Okay.  Mr. O'Donovan.

5                    MR. O'DONOVAN:  That is our argument.

6                    THE COURT:  Right.  Question for you.  There

7    is an argument I guess about the Court's discretion that

8    perhaps even if these two conditions that you outline are

9    satisfied, the Court still has discretion to not require

10   countersecurity.  So I guess two related questions.

11                   First, if that is true, why should I not

12   exercise my discretion against you?

13                   But, secondarily, do you take the view that if I

14   were to find that second condition is not satisfied, that I

15   nonetheless do have discretion to order countersecurity?

16                   MR. O'DONOVAN:  Judge, let me take those in

17   reverse order.

18                   It does seem to me that the Court does have

19   discretion here even though the rule is phrased in a

20   mandatory manner.  So I don't see that -- this does not

21   arise out of the same transaction or occurrence but it does

22   seem to me that the Court does have the discretion, even if

23   the Court were to find that it is not the same transaction

24   or occurrence, the Court could still order countersecurity.

25                   And I think the whole point of security both on

1    the original arrest and the demand for countersecurity,

2    we're talking about the same issues here which is

3    essentially neither of these parties is here within the

4    jurisdiction of this Court other than the ship having been

5    given that happenstance.

6            And the problem is if there is a judgment for

7    either party without security, then that judgment is

8    essentially worthless because neither company is located in

9    the United States and we would be chasing around the world

10   trying to recover.  So the point here is we believe we have

11   a valid counterclaim and without security, we can proceed

12   down the road with our counterclaim, get a judgment and then

13   Praxis just disappears.

14           So that is the point of the rule is to protect

15   both parties.  Just as Praxis was entitled to get security

16   for its arrest in order that if they get a judgment, that

17   judgment will be paid, similarly we're in exactly the same

18   position.

19           THE COURT:  Okay.  Thank you very much.  Let me

20   hear from plaintiff, please.

21           MR. SIMMS:  Your Honor, we'll start with what

22   the rule says.

23           Supplemental Rule C(7).  When a person who is

24   given security for damages, original action, asserts a

25   counterclaim, okay, there is a counterclaim.  That arises

from the transaction or occurrence that is the subject of
the original action.

        This doesn't.  It's a wrongful arrest
counterclaim.  It arises out of the arrest, not out of the
original provision of bunkers.

        For example, if there had been something wrong
with the bunkers, they messed up the engine, that is arising
out of the original transaction, okay?  If Praxis had
delivered less fuel than it is charging for and there is
some sort of fraud, that arises out of the original
transaction.

        This doesn't.  It is a counterclaim for wrongful
arrest damages that happened in Brazil, long after the
original action.  It is not the subject of the original
action.  And the cases we cited, and you will never find any
that go against this, are very clear.  And wrongful arrest
counterclaims are almost, it's almost unheard of not to draw
one of these things when you arrest a ship.  And that is
exactly why the rule was written that way, okay?  The action
does not automatically grind to a halt just because somebody
alleges wrongful arrest claims.

        And so there is no countersecurity required
here.  And the Court does not have discretion.  There is no
place in the rules that provides for countersecurity where
there is a counterclaim for wrongful arrest.  It just is not

the way the rules work, and here is why.  It is a different

nature of action.  It is an in personam action.

Why does Praxis have security here?  Because

it stands in the place of the ship in rem.  It is the basis

of the Court's jurisdiction.  Very different from the in

personam claim against Praxis.  Praxis is a major

international oil trader with offices all around the world,

included in Greece, included in Singapore.

Just like any in personam action, if the owners

here somehow were able to get their wrongful arrest damages,

then they could get it in Brazil.  There is no claim down

there that they have a right to countersecurity.  There

hasn't been any.

They could take the judgment any place.  But we

can't.  We have to get it from the ship in rem.  That is why

Praxis gets security here.

But the rule is just very clear.  This is not a

transaction of occurrence that is the subject of the -- that

arises out of the original action.

THE COURT:  All right.  Let me ask you a few

questions.

First off, you say the rule is very clear.  Have

you pointed to anything in the rules or in case law that

says that the Court does not have discretion, that is, that

the Court's discretion here is bounded by Rule E(7)(a)?

1          MR. SIMMS:  It never came up before.  And we can

2    certainly send you a letter back that I could, you know --

3    but it just doesn't, you know, it's sort of like pigs

4    flying, I mean it just doesn't, it just doesn't happen.

5          Gosh, I'm thinking in the Eastern District of

6    Louisiana rules, there is a local rule that gives security

7    for costs, you know, something like $500 or $600 if there

8    is a cost award for depositions or something, but not

9    countersecurity for a wrongful arrest claim.  It just

10   doesn't come up.

11         THE COURT:  The defendant argues that the burden

12   is on you.  Do you agree?

13         MR. SIMMS:  No.  No.  It's on the defendant.

14   Because, again, otherwise what would be happening?  You

15   would always have a wrongful arrest claim; and then the

16   defendant would say, well, prove that everything doesn't

17   have to stop.  And that is not the way the rule works.

18         The claim has to arise from the transaction

19   or occurrence subject to the original action.  And the

20   claimants, shipowner here, is taking a risk.  That is,

21   they're insisting that it arises.  We say, no, it doesn't.

22   We're moving the case ahead.  They can respond to the

23   summary judgment motion or insist somehow it is stayed,

24   but the case is not stayed.  And like I say, there is not

25   any case law out there that says where you have got a

counterclaim for wrongful arrest that it is within the
automatic stay provisions of the supplemental rules.

           THE COURT:  Well, here, if I understand it
correctly --

           MR. O'DONOVAN:  Your Honor, if I might respond?

           THE COURT:  You will get a chance.  Hold on.

           MR. O'DONOVAN:  Thank you.

           THE COURT:  Yes.  So here if I understand, there
were proceedings in Brazil that at least the defendant
characterizes as largely overlapping with what is now
presented to me.  Does the plaintiff disagree with that
characterization?  And if you don't, then I mean doesn't, to
the extent you are telling me that if I go for them, every
one of these cases is going to have a demand for counter-
security, don't the Brazilian proceedings distinguish this
case from most of them?

           MR. SIMMS:  No, the Brazilian proceedings are
wrongful attachment proceedings.  And there is no interim
arrest in Brazil.  What Praxis did in Brazil was to attach
the ship, just like Rule B, as property of the owners under
a theory that they could do that.  And the Brazil court
said, sorry, that's wrongful.  You pay our fees and you pay
damages because you held up the ship.

           Same thing.  It's a consequence of the arrest,
not of the original transaction.

1  Here, however, therein isn't a Rule B action but
2  there definitely is a Rule C action in rem against the ship
3  under the *Bulk Juliana* and other cases we cited.

4  And so it is, it is two, basically two
5  procedures.  No in rem in Brazil but arguably attachment.
6  The Brazil Court disagreed.

7  Here, in rem, but no attachment.  And so we
8  arrested the ship and we've got security because of the in
9  rem.

10  THE COURT:  All right.  Mr. Simms, you cite a
11  bunch of cases that even you summarize as speaking of the
12  broad discretion the Court has to decide whether
13  countersecurity is appropriate.  Why shouldn't I read those
14  cases as here supporting a suggestion that I do what seems
15  fair and equitable and place both sides on equal footing and
16  therefore impose a countersecurity requirement?

17  MR. SIMMS:  Well, the discretion is bounded by
18  the rule, and the rule here starts by saying the counterclaim
19  has to arise from the transaction or occurrence subject to
20  the original action.  And so the Court would have to fit the
21  awarding of countersecurity within the arising out of the
22  transaction or occurrence subject to the original transaction,
23  and that is just not present here.  It's a counterclaim for
24  wrongful arrest, wrongful attachment in Brazil that happened
25  way after the original action.

1              THE COURT:  All right.  Thank you.

2              Mr. O'Donovan, you wanted to add something?

3              MR. O'DONOVAN:  Yes.  Just a few quick points,

4     Your Honor.

5              Mr. Simms makes a big argument out of the

6     counterclaim we have is for a wrongful arrest.  It's really

7     not a claim for wrongful arrest.  If you read the papers we

8     filed, none of them -- we don't allege that there has been a

9     wrongful arrest.  There are cases in this country where a

10    party whose ship is arrested will argue that the arrest

11    here was wrongful and therefore that they're entitled to

12    countersecurity, but that is not the situation we have here.

13             Now, we have cited to three or four cases in

14    our papers where, for example, there was an arbitration in

15    London that arose out of the same contract and then there

16    was an arrest or an attachment here in the U.S. and then

17    there was a demand for countersecurity for the fees that

18    were incurred or would be incurred in the London arbitration.

19             In our view, Judge, that is the scenario we

20    have here.  It is not necessarily that, it is not a wrongful

21    arrest or attachment in Brazil, it is under the Brazilian

22    rules and the laws and the decisions down there, we are

23    entitled to recover attorney fees and various other costs.

24    And that is a parallel proceeding that was filed alleging

25    exactly the same things that are alleged in this case.  And

that is why it's the same transaction or occurrence.  And

that is why, as you said, it would seem to be fair and

equitable to put both parties in the same position, i.e.,

they have security for their claim, and then we proceed

with -- once the countersecurity has been provided, then

we can proceed with the case on the merits.

THE COURT:  All right.

Mr. Simms, just address, if you would, the

distinction between an in rem and in personam action.  The

plaintiff seems to argue that almost per se you can't

satisfy the rule because your counterclaims are in personam

and their claim is of course in rem.

MR. SIMMS:  It's actually -- this is Simms.

It is a little bit different, Your Honor.  It

doesn't really turn on the in personam/in rem nature of it

as much as it turns on the essential nature of the action

in Brazil which is, it's for wrongful attachment.

There would never have been an award in Brazil

for money if the Brazilian court hadn't said, sorry, you

can't do this.  And only then you explain the procedural

differences because in Brazil, it is an in personam action.

Here, it is an in rem action.  But the reason that there is

no countersecurity is not because in rem or in personam,

it's because the damages in Brazil are for a wrongful

attachment after Praxis brought action there.  It's the same

as if they would be alleging a wrongful arrest here under

the in rem proceeding that is allowed here.

That is why there is not countersecurity.

Because it is not arising out of the same transaction, the

sale of the bunkers.  It's arising out of later litigation.

You can even say it is a different transaction.

THE COURT:  All right.

MR. SIMMS:  That is the distinction.

THE COURT:  All right.  And thank you for that,

Mr. Simms.

I had made a mistake.  I meant to ask

Mr. O'Donovan that, but that was a helpful response, and I

will come back to you, Mr. Simms, but, Mr. O'Donovan, would

you address this distinction between the in personam and in

rem and how it applies here?

MR. O'DONOVAN:  Well, Judge, I think Mr. Simms has

made the statement that there is no in rem playing in Brazil.

I think if you read the translation of the complaint which was

filed in Brazil, we attached an English translation, and you

will see that in that original complaint, there were several

-- it was alleged several times that there was a maritime lien

against the vessel for the supply of bunkers.

Now, maritime lien gives rise to an in rem claim.

So for Mr. Simms to blithely say the claims in Brazil were

strictly in personam is not supported by the actual papers

which were filed in Brazil.  So the papers which were filed

allege there was an in rem claim.  Security was posted in

Brazil.  It is still posted in Brazil.

And so I think that just goes to support our

claim here, which is both of these actions, the counterclaim

we have for what happened in Brazil arises out of the contract

to supply bunkers to Pebble Beach; and that is exactly the

same claim here in the United States.  Both claims allege

that there is a maritime lien against the ship that arises

out of that contract to supply the bunkers, and that was the

basis that security was provided in both cases.  And that is

why it's the same transaction or occurrence, and that is why

the requirements for Rule 7(a) are met in this case.

THE COURT:  All right.  Thank you.

Mr. Simms, is there anything you want to add?

MR. SIMMS:  Well, I am looking at, there is a

site called shiparrested.com that has good summaries of each

law, and I'm looking at the Brazilian summary.

Let's see.  I look at this and I say, okay, but

we lost.  That was that there was an allegation of an in rem

arrest and they lost.  And I guess there was, but I'm

looking at this.  I'm not quite sure that that -- I got it.

I think I understand why they lost.

But it doesn't matter whether it was in rem, in

personam, or in Mars.  This is a counterclaim.  It's a

counterclaim asserted in personam against Praxis. It is not arising out of the same transaction.

If, for example, let's say that the claimants here, Sithonia, were simply bring a direct claim against Praxis. Let's say they found Praxis somehow in your court. Well, there would be no entitlement to security. It's just a normal civil claim for damages. But it doesn't arise out of the same transaction or occurrence. It is long after the bunker transaction.

And, again, it's not the in personam in rem procedural distinction that turns the tide here. What turns the tide is did it arise out of the same transaction? And it didn't.

It's not a bad bunker claim. It's not a short bunker claim. It is not anything like that. It's litigation that happened in a Brazilian court system that says when you guess wrong, you've got to pay damages. That's what it is. And it doesn't come within the rule requiring mandatory security.

THE COURT: All right. Mr. O'Donovan, is there anything else?

MR. O'DONOVAN: Judge, one last very quick point.

This argument that Mr. Simms was making that somehow because the suit in Brazil happened after the supply

of bunkers somehow differentiates it from the current suit
pending before Your Honor, which also happened after the
supply of bunkers, I guess I don't get the distinction.
Both are lawsuits:  one in Brazil, one here in the U.S.
They make exactly the same argument, and that it can't be
more of the same transaction or occurrence.

With that, I'll rest, Your Honor.

THE COURT:  All right.  Thank you.

Thank you both for the helpful argument.

I did review the materials you all submitted in
advance of the call, and you have answered my questions on
the call.

Having had a little more time to think about it
as well, I find that I'm in agreement with the defendant
here and, therefore, I'm granting the motion for the
countersecurity.  The issue, of course, arises under
Admiralty Rule E(7)(a).

I think it is undisputed the first of the two
conditions that the defendant would have to show are met is
clearly met here.  The defendant has posted security.

The dispute is simply whether or not the
countersecurity claim of the defendant arises out of the
same transaction or occurrence or, to be precise, whether
the counterclaim arises from the transaction or occurrence
that is the subject of the original action.

1      And I find myself in agreement with the

2  defendant that that condition is also satisfied.  Just as

3  the plaintiff's action arises out of the supply of the oil

4  bunkers to the ship here that was arrested, so, too, do I

5  find that the defendant's counterclaim arises out of that

6  same supply of oil bunkers to the ship.

7      Most of the plaintiff's objections, at least

8  those that are argued in the papers, not so much today,

9  but in the papers I view as merits related.  There is a lot

10  of back and forth about the Praxis sales contract and

11  potentially a typographical error in it, some back and forth

12  about Brazilian law, some question about jurisdiction.

13      All of those are in my view merits issues that

14  we may have to address but don't impact the decision today.

15      Also, I guess I view it as unclear as to whether

16  or not I have discretion to order countersecurity even in

17  the event that the two express conditions in Rule E(7)(a)

18  are satisfied.

19      I need not decide today whether in fact that

20  rule completely bounds the Court's discretion to order

21  countersecurity.  I would simply say that to the extent I do

22  have discretion, I would exercise it in favor of defendants

23  in ordering countersecurity.  I think they have argued

24  persuasively why it makes sense in the context of this case

25  to have both parties on an equal footing, both protected by

security in order to eliminate or at least reduce the risk

of wasting anybody's time and money. And in terms of time

includes wasting the Court's time. And just fundamentally,

I think that plaintiff's interpretation of the rule is too

narrow, and it is not supported by the cases that have been

cited.

So I'm granting the defendant's motion. I do

want an order to sign to that effect; and I'll direct the

parties to work together to submit such an order.

I think that now does, by everyone's view, make

ripe proceeding on the summary judgment motion. It's the

plaintiff's motion. What do you propose in terms of a

briefing schedule on how to proceed with respect to the

motion, Mr. Simms?

MR. SIMMS: Well, Your Honor, with the Court's

Order that security is required, under the rule we're stayed

until we put up security. And so that's the steps we're

walking through at this point.

So the summary judgment motion sits out there

until Praxis posts security. And I'm looking at the

complaint now, and the demand is $137,190.46. And I think

we need to have an understanding about how that can be

posted and whether that that can be done by way of bond in

addition to cash; basically, those are the two alternatives;

or letter, a letter of credit.

1          So that's I think the answer on summary judgment

2     at this stage.

3          THE COURT:  Right.  So did plaintiffs just want

4     time to decide if they're posting security and how to do it

5     or do you want to talk about a briefing schedule?

6          MR. SIMMS:  Well, I think we could work off of

7     the time that security is posted, which is to say once

8     Praxis posts security, then 14 days for a response to the

9     motion.

10         THE COURT:  All right.  What is the defendant's

11    view?

12         MR. O'DONOVAN:  Judge, if I may.

13         THE COURT:  Go ahead.

14         MR. O'DONOVAN:  Judge, essentially what I was

15    going to suggest is if the Court would agree, that essentially

16    what we could do is Mr. Simms and I could talk about a

17    schedule, and once Mr. Simms has posted the security, we could

18    probably agree on a schedule which we could submit to the

19    Court with an agreed upon briefing schedule.

20         THE COURT:  Sure.  Mr. Simms.

21         MR. O'DONOVAN:  And the only reason --

22         THE COURT:  Go ahead, Mr. O'Donovan.

23         MR. O'DONOVAN:  The only reason I sort of take

24    that tact is with the holidays coming up, I'm just not sure

25    how easy it will be.  I don't know when the security is

going to be posted and how the holidays would impact on setting up the briefs.  Obviously, I think I am speaking for myself, I would prefer not to be working over the Christmas on the motion.

MR. SIMMS:  I wouldn't dare even think about that.  That's a good way to make an enemy of a friend, so I'm not doing that.

THE COURT:  Of course.  Here is what we'll do.  Yes, the impact of my ruling is that the case is stayed until security is posted.  I would like to get an order on the docket that reflects my granting of the motion and the fact that the case is stayed until that occurs.

So I direct that you meet and confer and try and get me a Form of Order some time this week that I can sign.  And it should also say that within some reasonable time after security is posted, the parties will submit a proposed briefing schedule for the pending motion.

Are there any questions about that, Mr. Simms?

MR. SIMMS:  And, Your Honor, also in the order, what I think should go in is a directive that if cash security is posted, then the court registry can accept that.  So just be more efficient because I think probably we're just going to do cash security.

THE COURT:  Right.  Okay.  Well, that's fine.  If you all agree on that, you can put some language to that

1    effect in there.

2              Is there anything else, Mr. O'Donovan?

3              MR. O'DONOVAN:  No, Judge.  We should have no

4    problem getting a joint Order, an agreed upon Form of Order

5    to the Court this week.

6              THE COURT:  Okay.  Wonderful.  Well, thank you

7    all very much.  Have a good night.

8              (Telephone conference ends at 5:02 p.m.)

9

10        I hereby certify the foregoing is a true and accurate
     transcript from my stenographic notes in the proceeding.

11

12                         /s/ Brian P. Gaffigan
                           Official Court Reporter
13                           U.S. District Court

14

15

16

17

18

19

20

21

22

23

24

25