```
1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -
     PRAXIS ENERGY AGENTS PTE LTD,
4                                          : CIVIL ACTION
              Plaintiff,                   :
5    v                                     :
                                           :
6    M/V PEBBLE BEACH, its engine,         :
     tackle, apparel and freights,         :
7                                          : NO. 17-559-LPS
              Defendant in rem.
8                              - - -

9                         Wilmington, Delaware
                         Tuesday, October 8, 2019
10                       Oral Argument Hearing

11                             - - -

12   BEFORE:      HONORABLE LEONARD P. STARK, Chief Judge

13                             - - -

14   APPEARANCES:

15
                 YOUNG CONAWAY STARGATT & TAYLOR, LLP
16               BY:  TIMOTHY JAY HOUSEAL, ESQ.

17                   and

18               SIMMS SHOWER, LLP
                 BY:  J. STEPHEN SIMMS, EQ.
19                   (Baltimore, Maryland)

20                   Counsel for Plaintiff

21
                 PALMER BIEZUP & HENDERSON, LLP
22               BY:  MICHAEL B. McCAULEY, ESQ.

23                   and

24

25                                 Brian P. Gaffigan
                                   Registered Merit Reporter
```

1    APPEARANCES:   (Continued)

2

3                  PALMER BIEZUP & HENDERSON, LLP
                   BY:   KEVIN G. O'DONOVAN, ESQ.
4                        (Philadelphia, Pennsylvania)

5                        Counsel for Claimant Sithonia Shipholding SA

6

7

8

9

10

11

12

13                            - oOo -

14                    P R O C E E D I N G S

15              (REPORTER'S NOTE:  The following hearing was

16   held in open court, beginning at 9:17 a.m.)

17              THE COURT:  Good morning.

18              (The attorneys respond, "Good morning, Your

19   Honor.")

20              THE COURT:  I'll have you put your appearances

21   on the record for us, please.

22              MR. HOUSEAL:  Good morning, Judge.  Timothy

23   Houseal at Young Conaway Stargatt & Taylor here on behalf of

24   plaintiff Praxis Energy Agents PTE Ltd.  With me is Stephen

25   Simms from the law firm of Simms Showers in Baltimore,

```
 1    Maryland.  He has been admitted pro hac vice and has
 2    appeared before you before.
 3              MR. SIMMS:  Good morning, Your Honor.
 4              THE COURT:  Good morning.
 5              MR. McCAULEY:  Good morning, Your Honor.
 6              THE COURT:  Good morning.
 7              MR. McCAULEY:  I'm Michael McCauley.  We
 8    represent Sithonia; and I'm here with my colleague from
 9    Philadelphia, Kevin O'Donovan, who will be presenting
10    argument, if Your Honor pleases.
11              THE COURT:  That is fine.  Good morning,
12    Mr. O'Donovan.
13              MR. O'DONOVAN:  Good morning.
14              THE COURT:  So we have two renewed motions for
15    summary judgment today.  Did you all confer on how you might
16    like to use your time?  And if not, what would be your
17    request, from the Praxis's perspective?
18              MR. HOUSEAL:  Your Honor, we haven't really
19    conferred in that regard.  We have sort of cross motions
20    that are the mirror error images of each other.  We thought
21    since we were the plaintiff we would go with theirs, if that
22    pleases Your Honor.
23              MR. O'DONOVAN:  That's fine.
24              THE COURT:  We'll hear from plaintiff first but
25    basically touch on all the issues, if you would.
```

```
1              MR. SIMMS:  Your Honor, we're moving for
2    summary judgment, of course, against the two counts of the
3    counterclaim, both of which have the same problem which is
4    that they are seeking attorney fees.  Attorney fees aren't
5    damages.  There is no cause of action for attorney fees.
6              THE COURT:  All right.  So you are going to have
7    to help me with this.  As I understand it, they're pointing
8    to your terms and conditions contract which says the
9    prevailing party is entitled to fees.
10              They say they're the prevailing party in this
11    proceeding that you initiated.  If I were to agree with all
12    that, I'm not saying necessarily I do, but if I were, what
13    difference does it make if there is a counterclaim for
14    damages or not?
15              MR. SIMMS:  Well, it makes two differences.  The
16    first difference is when the counterclaim started, there was
17    a claim for an independent cause of action which gave rise
18    to a demand for security.  So, right now, Praxis has around
19    $120,000 of countersecurity which it never should have had
20    to post in the first place because there was no cause of action.
21              The second reason is -- and so, if what they
22    were saying was when they brought the counterclaim, we might
23    be the prevailing party, they weren't saying we have damages
24    right now, they were saying we might be the prevailing party.
25    What is the consequence of that clause if it applies?
```

```
 1              The consequence is just like any other fee

 2     shifting clause or any other fee shifting statute, which is

 3     at the end of the litigation, the Court says yes, you are

 4     the prevailing party:  Rule 54, submit your fee petition,

 5     and we'll assess fees.  But it's not damages.

 6              The other part of it that is essential is that

 7     it isn't a cause of action in the first place, and that

 8     gets to prevailing party, because when the Court looks at

 9     prevailing party, it, of course, looks at the entire action,

10     not only what Praxis has claimed to arrest the ship which

11     Your Honor had already ruled on but also the counterclaims,

12     the whole case.

13              Well, the Sithonia can't succeed on its

14     counterclaims in the first place, but if you want to make

15     counts of counts, Praxis has one count, they have two

16     counts.  So if they lose on their two counts, which they

17     say are meritorious, they can't possibly be the prevailing

18     party even though this Court has already ruled against

19     Praxis.  So those are the two reasons that this is important.

20              THE COURT:  So if I view it as a three count

21     case, you are saying the prevailing party by definition is

22     whoever wins at least two out of three?

23              MR. SIMMS:  No, I'm saying there can only be a

24     prevailing party, the prevailing party.  Nobody wins.

25              THE COURT:  Right.  Your contract says the
```

1   prevailing party, doesn't it?

2              MR. SIMMS:  Correct, the prevailing party.

3              THE COURT:  So you brought this case.  You

4   wanted me to order the defendants to pay you.  You lost, so

5   they would be the prevailing party.  Why does anything else

6   matter.

7              MR. SIMMS:  Because they lose on their counts.

8   The whole case, what they came in to say is under Rule C(9).

9   We have a claim that arises out of the very same thing that

10  you are suing on.  It's the same case.  It's a compulsory

11  counterclaim.  So they came in and they said we should get

12  security for our two counts.  So they lose.  There is no

13  possible way they can win on those counts.  The case law is

14  very clear.  They cannot be the prevailing party on those

15  counts.  They cannot be the prevailing party on the whole

16  case.  They lost.  There is no prevailing party.  We are as

17  much of a prevailing party against Sithonia as they are the

18  prevailing party against Praxis.

19              THE COURT:  I don't see how you possibly could

20  be the prevailing party if you brought this case to recover

21  the money and under no scenario left in this case will you

22  recover that money.  Isn't that correct?

23              MR. SIMMS:  What I'm saying is that we are not

24  the prevailing party and Sithonia is not the prevailing

25  party.  There is no prevailing party.

1          THE COURT:  Okay.  So that is not what you just

2     said a moment ago.  You are not here to argue that there is

3     any way you could come out of these motions and be the

4     prevailing party.  You agree with that?

5          MR. SIMMS:  I agree with that.

6          THE COURT:  The question is whether they can be

7     the prevailing party.

8          MR. SIMMS:  Right.  Now, Your Honor, if it,

9     if the way the law worked was to break it down in little

10    pieces, then we would say, well, Praxis was the prevailing

11    party on the initial arrest, and as a matter of fact under

12    your opinion.  Praxis was the prevailing party on much of

13    its argument, but that is not the way it works.  The way

14    it works is you look at the whole case.  There is no "the"

15    prevailing party.

16          Their claim in addition has another problem.

17    Claiming to be a party, okay?  When you look at the way the

18    law works, let's say that Praxis wins.  Praxis is claiming

19    in rem against the vessel.  There is not a way that Praxis

20    can get attorney fees against the vessel.  Admiralty law

21    is very clear.  Attorney fees are not maritime necessary.

22    Maritime lawyers are not necessary for commerce.  So if

23    Praxis won, it could never get its attorney fees against

24    what Sithonia claims is a party.  Sithonia says what we're

25    not an in personam party.  Oh, no, we're not going to pay

1    you for those bunkers you never got paid for, but it's the

2    ship that is a party.  But you are never going to hear them

3    say if Praxis were to win, at the end of the day, Praxis

4    could recover its attorney fees.  So Sithonia, claiming

5    through the ship, cannot be possibly a party to this.

6              THE COURT:  You are losing me again.  You all

7    wrote the contract; right?

8              MR. SIMMS:  Yes.

9              THE COURT:  Your contract says if any proceeding

10   of any nature whatsoever is instituted under the two clauses

11   -- by the way, you don't dispute any longer that those clauses

12   are the ones we're talking about; right?  There is a typo in

13   this provision.

14             MR. SIMMS:  We're talking about those clauses,

15   yes.

16             THE COURT:  So if any proceeding of any nature,

17   whatsoever instituted under those clauses, in connection

18   with any controversy arising out of these conditions or the

19   agreement or to interpret or to enforce any rights under

20   the agreement, the prevailing party shall have the right

21   to recover from the losing party its reasonable costs and

22   attorney fees incurred in such proceeding.

23             Why isn't that either ambiguous or unambiguous

24   that when you start a proceeding, which you chose to do

25   relating to these terms and conditions, whoever wins,

1    whoever is the prevailing party, whether it is you or

2    whether it is them, gets their attorney fees because by

3    contract, that is what you all set up?

4                MR. SIMMS:  By contract, which is overlaid by

5    the law, that applies to the contract, and we're in maritime

6    law.

7                Had Praxis brought an in personam suit against

8    Sithonia, Praxis could argue that its terms and conditions

9    should apply, it should receive its attorney fees if it

10   wins in personam, but this is an in personam suit.

11               Praxis brought an in rem case against the ship,

12   and admiralty law is very clear that Praxis can't receive

13   its attorney fees.  The ship cannot be a party under this

14   contract, one way or the other.  That's the way the law

15   works.

16               This is the clause only deals with in personam

17   claims, not where somebody comes in and says, well, I'm the

18   ship.  If you win against me, I don't have to pay, but if I

19   win against you, you have to pay.

20               THE COURT:  So you are saying admiralty law

21   reduces what you have written in your contract to only be

22   applicable in an in personam action?

23               MR. SIMMS:  Yes, sir.

24               THE COURT:  And there is not even ambiguity in

25   here about that, or if there is, you are off the hook from

1    that ambiguity that you drafted into your contract because

2    admiralty law just says no way can they get their attorney

3    fees even if you write into your contract we're going to

4    give you attorney fees if we sue you and we lose.

5              MR. SIMMS:  If we sue an in personam party and

6    we lose, that's right.  But admiralty law is very clear, you

7    can't get your attorney fees.  Now, if that were a rule that

8    the Court were to say, oh, yes, anyhow, if you write that

9    into a contract, you can get attorney fees in an in personam

10   case, I got a lot of friends that would be very happy, but

11   it's not the law.

12             THE COURT:  All right.  So your further argument

13   is if they don't get their attorney fees under their first

14   counterclaim, then they're not the prevailing party, and

15   tell me why that is.

16             MR. SIMMS:  Well, they have -- of course, they

17   have two counts of counterclaim.  It's the whole case, not

18   the -- they're bringing a case to interpret these terms and

19   conditions claiming that they're the prevailing party under

20   the terms and conditions.

21             So if they lose, and they should, because there

22   is no cause of action, those two counts, they can't be the

23   prevailing party in the whole case.  They can't be.  You

24   have -- so Sithonia comes in and says we have a claim that

25   is every bit as valid as yours is.  We have a reason to be

1   paid, as a matter of damages, what we claim in these two

2   counterclaims.  You don't have a right to get anything.

3   And the whole case is what the Court needs to look at,

4   determining prevailing party, and so neither party prevails.

5                    THE COURT:  All right.  What about their

6   Brazilian counterclaim?  What do you want me to do with

7   that?

8                    MR. SIMMS:  Well, first off, it's for attorney

9   fees and costs, same problem.

10                    Second off, in Brazil, and we have -- the Court

11   would need to look at Brazilian law, but just look at the

12   proceedings.  The Stralia did not ask for and could not have

13   asked for countersecurity for its attorney fees and costs

14   in Brazil.  There is no security standing in Brazil at all.

15                    Third, what Stralia has asked you to do is to

16   enforce a foreign judgment that is not a judgment.  It's

17   come in and said we have litigation in Brazil.  We can't get

18   countersecurity there, but we're coming to Your Honor to ask

19   you to enforce a judgment that is not a judgment, forget all

20   the parts of, if Delaware law applies, enforcing a foreign

21   judgment, what has to be proven.  Forget about that, even

22   though there is no judgment yet, so we want you to give us

23   something, security for something that has not happened yet,

24   and we never could have gotten under Brazil law in the first

25   place.  So that's the problem with that count.

1          THE COURT:  So if I grant your motion for

2    summary judgment with respect to their Brazil counterclaim,

3    what would that mean?  You get the security back and the

4    case is over or something else?

5          MR. SIMMS:  The security comes back, and then

6    there is the decision against Praxis, and then Praxis

7    decides what it wants us to do with that.  But there is a

8    final judgment at that point.

9          THE COURT:  Right.  The case in front of me is

10   over at that point; right?

11         MR. SIMMS:  Yes.

12         THE COURT:  Then what happens if next week or

13   whatever they do get a judgment in Brazil?  Does that have

14   any implications for this action or is it they're just on

15   their own to do whatever they do?

16         MR. SIMMS:  They're on their own to do

17   whatever they do.  Praxis is in Dubai.  Dubai has a means

18   for enforcing foreign judgments.  Why isn't it proper to go

19   to Dubai like you would normally and enforce a foreign

20   judgment under Dubai law?  It is.  That is what you do.  But

21   you can't enforce a judgment that is the foreign judgment

22   that is not a judgment, and Sithonia is very clear about

23   that.

24         There is no judgment.  So there is nothing to

25   enforce.  There wasn't certainly anything to enforce Brazil

```
 1    law-wise back at, what are we talking about now, two years
 2    ago when Sithonia first raised this counterclaim.
 3                THE COURT:  Okay.  Is there anything else?
 4                MR. SIMMS:  No, sir.
 5                THE COURT:  Okay.  We'll give you another chance
 6    to get back up here.  Thank you.
 7                MR. O'DONOVAN:  Good morning, Your Honor.
 8                THE COURT:  Good morning.
 9                MR. O'DONOVAN:  To some extent, some of the
10    things that you have already said were what I had down to
11    talk about here.  I mean this is really a breach of contract
12    case.  There is one count in the complaint, and that count
13    is for a breach of contract.
14                So Praxis has now lost that count and as you
15    pointed out, Section 22.04 of their terms and conditions
16    says if they bring a lawsuit and they lose, they are no
17    longer the prevailing party.  We are the prevailing party
18    on that one count.
19                THE COURT:  But they tell me that admiralty law
20    doesn't allow me to enforce that provision if it's an in rem
21    action.
22                MR. O'DONOVAN:  Judge, admiralty law says that
23    a plaintiff who seizes a ship in rem cannot include within
24    that maritime lien a claim for attorney fees.  That is all
25    admiralty law says.  Admiralty law does not say that an in
```

1    rem defendant such as the Pebble Beach who had a contract

2    based claim against a plaintiff based on plaintiff's own

3    contract cannot, is not entitled to recover its attorney

4    fees.

5              THE COURT:  All right.  But is the implication

6    of what you are saying that had they prevailed on summary

7    judgment on their claim, you would be standing here and

8    saying I can't enforce this attorney fee provision against

9    you, i.e., against Pebble Beach?

10             MR. O'DONOVAN:  They cannot, correct, because

11   there is no -- well, they could still make an argument that

12   the contract would apply against the ship, but they don't

13   have a maritime lien and the maritime lien is the basis for

14   the arrest in the first place, the Rule C arrest.  So they

15   can try and make an argument that the contract, under the

16   contract they're entitled to their attorney fees, but they

17   don't have a maritime lien for their attorney fees.  That is

18   what maritime law says.

19             THE COURT:  And, again, why is that not a

20   problem for your position?

21             MR. O'DONOVAN:  Because I'm not arguing for

22   attorney fees against Praxis based on a maritime lien.  I am

23   arguing based on Praxis's own contract, and Praxis can't

24   deny that Praxis is a party to this contract because if they

25   do, why have we been here for two years?  I mean it's a

1    breach of contract claim.

2              THE COURT:  Right.  So you do argue that at

3    least we're clear on who you are.  Sithonia certainly argues

4    they are not --

5              MR. O'DONOVAN:  Correct.

6              THE COURT:  -- a party to this contract.

7              MR. O'DONOVAN:  And the vessel has argued that

8    it is not a party to this contract.  I agree.

9              THE COURT:  So then how do I interpret the

10   reference to prevailing party in this 22.04 of the contract?

11             MR. O'DONOVAN:  Well, as I pointed out in the

12   brief that I -- in the briefs, Judge, Section 22.03, which

13   is the preceding clause, which refers to the cause of action

14   that Praxis brought, says that Praxis can bring a proceeding

15   against a party to the contract or any other party.

16             We would argue that the ship is not bound by the

17   terms of the contract.  However, the ship is that "any other

18   party" that Praxis sued.  We are the prevailing party, i.e.,

19   prevailing entity.  Let's take the word "party" out.  We are

20   the entity that Praxis sued under clause 22.03, and under

21   clause 22.04, because we won, we are entitled to recover our

22   attorney fees and costs.

23             THE COURT:  All right.  Now, what about the

24   argument that at least when the case started and you first

25   filed your counterclaims and you hadn't won on summary

1    judgment, those counterclaims don't really exist?

2              MR. O'DONOVAN:  Judge, they were compulsory

3    counterclaims.  They arose out of the same issues that were

4    being addressed in the complaint, and they were, yes, could

5    we have recovered right at the beginning?  No, we were

6    not the prevailing parties at that time.  We are now the

7    prevailing party and, therefore, we can proceed with those

8    counterclaims.

9              We filed them at that time because they are a

10   compulsory counterclaim, they arise out of the same set of

11   facts, the same legal arguments and out of the same contract.

12             THE COURT:  Did you have the option of not

13   filing counterclaims, then just at the end of the case

14   making a motion to enforce your rights under 22.04?

15             MR. O'DONOVAN:  Judge, the problem then would

16   have been we would not have been available to obtain

17   security and Praxis is in Dubai.  So part of the goal of

18   asserting the counterclaim at the beginning just like it

19   was for Praxis, this is a case where we're dealing with a

20   whole lot of people, none of whom are in this country, and,

21   therefore, both of us want security because we don't want

22   to be in a situation where we have a judgment and we have

23   to chase all over the world trying to enforce it.

24             I don't know how easy it is to enforce a

25   judgment in Dubai.  It's a lot easier to enforce a

1    judgment in this court where we were sued and where I have

2    countersecurity.  So that is why the counterclaim is

3    brought.  We have the countersecurity.  That is why we're

4    here.

5                 Judge, also, this issue of party/nonparty, there

6    is a case that I cited in the brief, *Leopard Marine* arose

7    under somewhat similar circumstances.  There was an arrest

8    in Panama for a bunker supply contract.  The shipowner took

9    the position in Panama that the arrest was basically barred

10   by the statute of limitations so they brought a companion

11   lawsuit here in New York under the terms of the bunker

12   contract because there was a forum selection clause in that

13   bunker contract, and the bunker supplier said, no, no, no.

14   You can't do that.  You can't bring a suit here.  There is

15   no jurisdiction in New York.  And the shipowner pointed to

16   the contract and said you sued us based on this contract in

17   Panama.  You're claiming we are bound by the terms of this

18   contract.  We are now just seeking to enforce another term

19   in that contract here in New York.  And the District Court

20   in New York said if you sue based on a contract, then you

21   have to expect that the person you sue is going to use

22   another clause in that contract against you.  And,

23                 That is exactly what we're trying to do here.

24   Praxis sued us based on clause 22.03.  We are now seeking to

25   enforce clause 22.04 against them.  As the Court said in

```
 1        New York, it is entirely foreseeable if you bring a breach
 2   of contract action that it can come back to bite you.
 3              Those are the points on our basis, in support of
 4   our argument that we're entitled to attorney fees for the
 5   Delaware action.
 6              THE COURT:  So what about the argument that you
 7   may not be the prevailing party?  That is, let's just assume
 8   for the sake of argument I deny your motion for summary
 9   judgment.  Now, arguably you have lost on two counterclaims.
10   You prevailed on their claim, maybe nobody is a prevailing
11   party?
12              MR. O'DONOVAN:  Judge, just to be clear, we have
13   not moved for summary judgment with respect to the Brazilian
14   claims, and the reason for that is I don't believe it's
15   ripe.
16              THE COURT:  Well, we're going to talk about
17   that.
18              MR. O'DONOVAN:  I agree.
19              THE COURT:  They have moved for summary
20   judgment.
21              MR. O'DONOVAN:  They have.
22              THE COURT:  So just for --
23              MR. O'DONOVAN:  Okay.
24              THE COURT:  -- for the sake of argument, the
25   score is 2 to 1 because you lose everything today.
```

1          MR. O'DONOVAN:  Right.

2          THE COURT:  Are you the prevailing party?

3          MR. O'DONOVAN:  Well, first of all, clause 22.03

4    says if Praxis sues us and we win, then under clause 22.04,

5    we are entitled to recover our fees and costs.  There is no

6    mention of counterclaims, anything like that.  It's simply

7    the breach of contract claim they brought and we defend

8    against it.

9          The argument with respect to our counterclaim

10   for fees and costs is frankly, Judge, my head spins when I

11   try to understand it.  If we lose on that claim, that we're

12   entitled to our fees and costs, then we lose.  And so we

13   don't have a claim, so whether we're the prevailing party or

14   not really doesn't matter.  That claim is over.

15         THE COURT:  Let's try it this way.  Sometimes the

16   prevailing parties analysis is has the legal relationship

17   between the parties been shifted?

18         If I grant their motion for summary judgment

19   today and deny yours, help me if I'm missing something here.

20   Arguably, nobody's legal relationship has changed.  They

21   lost what they tried to do, you lost what you tried to do,

22   and we all go on.

23         MR. O'DONOVAN:  Right.

24         THE COURT:  Arguably, then there is no

25   prevailing party.

```
 1              MR. O'DONOVAN:  Right.  If you ruled for some

 2    other reason than the prevailing party issue, that we are

 3    not entitled to pursue our claim for fees and costs in the

 4    Delaware action, then whether or not we are the prevailing

 5    party doesn't matter because you dismissed our claim for

 6    fees and costs.

 7              So if you rule for some other reason.  If you

 8    were to rule that we -- in other words, to rule we are

 9    not -- to rule against us on the fees and costs claim, you

10    are saying we are not, we didn't prevail on the fees and

11    costs claim.  We don't have a fees and costs claim, and

12    therefore it's irrelevant whether we're the prevailing party

13    for those two claims.

14              THE COURT:  All right.  My head might be

15    spinning.  I think I've got you.

16              MR. O'DONOVAN:  Okay.

17              THE COURT:  Do talk about the Brazil action.

18              MR. O'DONOVAN:  If I can, just briefly on the

19    prevailing party.  The last thing, Judge, is this sort of,

20    well, Praxis made various arguments, some of which they won

21    in the original summary judgment motion but ultimately they

22    lost.  So it's not a matter of how many arguments did you

23    make, and did you win three out of four of them.  The

24    question is did you prevail in that claim?  And that claim

25    was we breached the contract.  Your Honor has ruled that we
```

1    prevailed, so whether we made three or four arguments only

2    one of them worked doesn't really matter.  We prevailed at

3    the end of the day.  That's what counts.

4              That's my argument.

5              THE COURT:  Okay.

6              MR. O'DONOVAN:  On the Brazilian claims, I think

7    the first and the overarching thing is it's too early for

8    anybody to know what is going to happen in Brazil and

9    therefore summary judgment with respect to the Brazilian

10   claims, Your Honor is just not in the position to be able

11   to render a ruling because we don't know what is going to

12   happen.  It could be that in Brazil, they decide we're not

13   entitled to attorney fees.  It could be in Brazil they

14   decide we are entitled to attorney fees and Praxis pays them.

15             In either of those scenarios, that's our

16   counterclaim is gone and we don't have to decide that now.

17   So I think until Brazil rules finally, it's premature for

18   this Court to do anything on their motion for summary

19   judgment.

20             THE COURT:  But it's a very odd argument I think

21   because my case is basically done once I rule on these

22   motions.  I'm allowed to I think have a schedule.  The time

23   is now for you to make the showing you have to make in order

24   to prevail on your counterclaim; right?  There is a summary

25   judgment motion.  That puts a burden on you to come forward

1    with evidence, at least create a material of genuine

2    disputed facts.  If I say you haven't done that, at least in

3    a normal case, I grant summary judgment, the case is over.

4              So I guess question one is why shouldn't I treat

5    this like a normal case?  And, question two, if I did, what

6    is the prejudice to you if you ever get a judgment, you have

7    I would think all the same rights to enforce that judgment

8    that you have today.

9              MR. O'DONOVAN:  Well, Judge, again, we come back

10   to the security issues, that we have security here, which

11   is why we got it in the first place.  And Your Honor has

12   already ruled we are entitled to that security.

13             THE COURT:  Right.  I don't think I rule and

14   I'll keep my case open forever.

15             MR. O'DONOVAN:  No, but, Judge, certainly there

16   is a way you could decide the two issues which you have in

17   front of you:  On, at least on our, the one issue on our

18   summary judgment motion, whether or not we're entitled to

19   security fees, and you could stay the remaining counterclaim

20   with respect to the Brazilian issues.

21             If Praxis wants to take the case up on appeal,

22   Praxis can take the case up on appeal, and then when the

23   Brazilian court issues its judgment, we can seek to enforce

24   it here under the counterclaim.  That is a possibility.

25             But the bottom line is I believe we are entitled

1    to raise our counterclaim for attorney fees in Brazil.  And

2    one of the cases that has shown up in briefs filed by both

3    Praxis and Pebble Beach is this *Fargo Freight* case where

4    basically the Southern District of New York says that

5    damages for a counterclaim can include attorney fees where

6    those fees are recoverable as part of the counterclaim, for

7    example, under English law.  England, like Brazil, awards

8    fees and costs in its litigation.

9              So in a lot of these maritime cases, there will

10   be an arrest and attachment, there will be an arbitration

11   in England, there is a counterclaim for the fees and costs

12   for that arbitration in England.  That is granted.  The

13   arbitration in England may take two or three years, but

14   there is security here so that if the arbitration in England

15   is rendered in favor of the defendant, they can come here

16   and they can enforce that arbitration award in the United

17   States against the security that they have obtained.

18             I mean that is what Praxis has done in this

19   case.  They have, they grabbed security so that once the

20   case is over, and assuming Your Honor were to rule in their

21   favor, they could then recover on that judgment.  So it is

22   not uncommon in Maritime Rule C and Rule B attachments that

23   cases will be filed and then be stayed until the underlying

24   foreign proceeding is over and a judgment issued and then

25   that judgment can be enforced in the U.S. against the

 1    security which was obtained here.  That is why Rule B and

 2    Rule C exists in large part.

 3              THE COURT:  It's the security that your

 4    concerned with, not so much having this claim or this case

 5    alive; is that correct?

 6              MR. O'DONOVAN:  It is the security, but in order

 7    to get the security, we had to assert a counterclaim, and

 8    we had to assert a compulsory counterclaim because of the

 9    compulsory counterclaim rules.

10              (Sneezing.)  Excuse me, Judge.  So just at the

11    time of the filing, that was our feeling as to what we had

12    to do to protect our client's interest to recover those fees

13    and costs.

14              Because Brazil, the problem we're facing, Judge,

15    is Praxis is chasing this shipowner all over the world to

16    try to collect on a charter who has disappeared.  So they

17    sued us in Brazil.  They have caused my client to incur a

18    great deal of fees and costs in Brazil.  In all likelihood,

19    they're going to lose in Brazil, but we don't have money in

20    Brazil that we can collect, so Praxis will disappear, and we

21    have to chase them all over the world and get assets from

22    them.  That is why we got security here, to protect those

23    rights, and that is what Rule B and Rule C provide for.  So

24    that is what we did.

25              THE COURT:  Do you have any idea how long it is

1  going to be until they're done in Brazil?

2            MR. O'DONOVAN:  I have been told by --

3  apparently we are now at the final stage.  There are no

4  more appeals after this.  Excuse me.  So we are waiting for

5  one more decision.  And I have been told perhaps, you know,

6  hopefully by the end of the year, but I can't promise you,

7  Judge.  I don't understand how the Brazilian proceedings

8  work.

9            THE COURT:  Just think about this practically

10  for a minute.  If I'm prepared to rule on the motions today,

11  so there is nothing, there is no more I can do in this case

12  unless and until Brazil finishes its case, but at best,

13  things haven't gotten any worse for the plaintiff but they

14  have already lost on their claim, so they have a right to

15  appeal.  They may want to appeal.

16            MR. O'DONOVAN:  Right.

17            THE COURT:  Is there a practical way that I

18  could rule on the motions, keep the security in place but

19  let them get on with their appeal if they want because I'm

20  concerned, if I do what you want, it sounds like my case is

21  still open and it means they are stuck with my decision.

22            MR. O'DONOVAN:  There are interlocutory appeals

23  permitted of admiralty cases, so I would think that this

24  would actually fit perfectly within that.

25            THE COURT:  Can you represent that you would

1    have no option to that?

2              MR. O'DONOVAN:  If you were to -- we would, if

3    you were to continue to hold on to the security, then we

4    would have no objection to that, yes.

5              THE COURT:  Is there anything else?

6              MR. O'DONOVAN:  No, Judge.  That's it.  Thank

7    you.

8              THE COURT:  Okay.  We will give you another

9    chance to come back if you want.

10             We'll turn it back to plaintiff.

11             MR. SIMMS:  Well, Your Honor, what we have

12   here is a tail wagging the dog and the dog is a Doberman

13   Pinscher; and because you want security, you don't get

14   security.  You have to have a claim for damages, and the

15   *Fargo* case, and other cases we have cited are very clear

16   about that.

17             Now, the reference to English law, we're not

18   talking about here.  There has been nothing in response to

19   the summary judgment motion about Brazil coming back from

20   the Sithonia side that says, yes, Brazilian attorney fees

21   are just like London, English lawyers fees.  They're always

22   awarded as part of damages.

23             It is not in the briefing, Your Honor.  It's not

24   there.  There is no -- there is -- it's just not.  This is

25   not like English attorney fees.  This is simply attorney

1    fees at the end of the action.  If you were to be, if we

2    were to be in England, for example, there would be already,

3    because there had been losses along the different stages in

4    the case, assessments of attorney fees in the case, but that

5    is not the case in Brazil.

6            Anyhow, there is no material fact raised on the

7    question of whether Brazilian attorney fees are like English

8    attorney fees.  They're not.  What we have is simply the

9    tail wagging the dog.

10           What should have happened, which you pointed

11   out, was at the end of the case, notwithstanding that

12   they're not a party because of the ship problem that I

13   mentioned, and you asked them, well, what about this?

14           You say the ship isn't a party?  Absolutely.

15           Sithonia isn't a party?  We heard the answer,

16   absolutely.  Sithonia, not a party.

17           Well, yeah, but the ship is another party.  So

18   you are another party but you are not party.

19           Okay, right.  That does not follow.  But what

20   should have happened at the end of the case, where there is

21   a fee shifting provision is not counterclaims, not claiming

22   compulsory counterclaims, they aren't, is simply a Rule

23   54(b) motion.  That is all that should have happened.  Then

24   there would have been a fee petition, the Court would have

25   looked at what reasonable fees, there would have been a

1    figure, and we're done.

2              But that is not what Sithonia did.  Sithonia

3    took their tail, they said we got to have security because

4    these people are -- and if you go to Dubai, there is

5    actually a functioning legal system there.  It's quite a

6    sophisticated place.

7              But anyhow, we got to have security.  We got to

8    figure out how to do it.  We're going to try to bootstrap

9    our way into a breach of contract claim which was not a

10   breach of contract claim, fundamentally.  How could you be a

11   prevailing party if you have not prevailed?

12             The claim would have to be we were a prevailing

13   party and we have had damages because they haven't paid our

14   attorney fees, but we're not a prevailing party because the

15   action hasn't even started yet.  And,

16             In fact, what the Court did say, we now have

17   a very, very pointed clear issue, which is, the Court said,

18   yes, you had a maritime lien.  You can arrest, but you

19   have received security for your in rem claims in Brazil.

20   Therefore, you couldn't arrest on the maritime lien you

21   otherwise had.

22             That is the very fine issue.  And then at the

23   end of the case, that case, what Sithonia could have done is

24   to come in and make the 54(b) motion, but they don't have

25   the right to security.

1    So the Court was asking what do you do with the

2    security?  It's not security Sithonia should ever have had

3    in the first place.  Should never have had it.  So it has to

4    be released.

5    At the end, if there is a Brazil judgment, then

6    Sithonia can come in and enforce that judgment wherever

7    Praxis can be found, and Praxis can probably be found

8    throughout the world.  It's an international company selling

9    bunkers throughout the world with customers that have

10   payables due to it.  You can enforce it like any other

11   judgment, but there has to be a judgment in Brazil, not

12   there might be, there might eventually there, and there is

13   certainly not any right to security under Rule C(6).  It is

14   not a compulsory counterclaim.

15   The *Leopard* case.  Interesting case.  *Leopard*,

16   the shipowner, never said that they were liable in personam

17   under that contract.  They never said they were a party to

18   the contract.  Their argument was, well, bunker supplier,

19   like Praxis, in your terms and conditions, if you said there

20   should be a Southern District of New York forum, you

21   expected that you would be there.  We want to be there, too.

22   Very different from what is being argued here where Praxis

23   says, oh, we're not a party, Sithonia is not a party -- the

24   ship is not a party, Sithonia is not a party.  They're not a

25   party.

1        THE COURT:  It sounds like exactly the same

2    argument, it is just forum selection clause instead of a fee

3    shifting clause.  Where did I miss you?  It seems like it

4    lined up on all fours except it was about forum selection as

5    opposed to fee shifting.

6        MR. SIMMS:  It was about the expectation of

7    the plaintiff.  But here, the plaintiff doesn't have any

8    expectation that it's going to get a ship which insists

9    it's not a party bring a counterclaim and want to collect

10   attorney fees for bringing that counterclaim, claiming it

11   is a prevailing party.

12       Let's flip that over a little bit.

13       THE COURT:  If your contract -- if I think

14   your contract says basically that, then the principle from

15   *Leopard* is if you are going to sue somebody or some in rem

16   ship on your contract, you better be prepared for the

17   contractual rights that others may have to be enforced

18   against you.

19       MR. SIMMS:  If Sithonia, and *Leopard* did not

20   go to the point that it should have gone, which was, okay,

21   shipowner, if you want to benefit from this contract in

22   personam, you pay.

23       So the natural consequence of Sithonia's

24   argument is we are a party.  We will be liable in personam

25   for this.  If that is what they're saying, then that is

1    great.   That is an easy case for Praxis.

2              THE COURT:   If the idea, the way you wrote your

3    contract, is you talk about a party in the sense of a

4    prevailing party in any proceeding, which is not necessarily

5    the same thing as a party to a contract, and if that is what

6    your contract says, and you brought a breach the contract

7    action, all I'm saying, or all I'm being asked to do is to

8    enforce the language of the contract that you wrote in a

9    fight that you started where you said whoever prevails in

10   the proceeding is going to gets their attorney fees.

11             MR. SIMMS:   An in personam party.

12             THE COURT:   But it doesn't say an in personam

13   party in your contract.   It says the party to the proceeding.

14             MR. SIMMS:   I understand, Your Honor.   And,

15   first, we go back to Sithonia, who says the ship isn't a

16   party, Sithonia isn't a party, and then we go back to the

17   overlying law which says that Praxis can't get its attorney

18   fees here.   And we heard, okay, that this is an in rem

19   proceeding.   It's only against the ship.   There is not any

20   other way for Praxis to get its attorney fees.   There is no

21   in personam action against a ship.   There is no in personam

22   action against Sithonia.

23             Praxis can't get its attorney fees here, had it

24   prevailed again somebody that claims they're a party but

25   maybe not a party, and so it's got to work both ways.

```
1              THE COURT:  Well, the argument Mr. O'Donovan

2    is saying they're not seeking their attorney fees based on

3    maritime lien.  They agree it is not part of the maritime

4    leap.  They're saying it is part of the contract that you

5    all voluntarily wrote and entered into, "you all" being

6    Praxis.

7              So what maritime law authority can you point

8    me to that says -- I understand you don't agree with this

9    interpretation of the contract, but that is if you write a

10   clear and unambiguous contract that says we don't care if it

11   is in rem, in personam, we don't care if you are a party or

12   not a party, if we sue you and we lose, we will pay your

13   attorney fees.  If it clearly and unambiguously said that,

14   what provision of maritime law says they're still stuck,

15   they can't recover on that?

16             MR. SIMMS:  Well, to the language of the

17   contract, not a party, you got to be a party, the prevailing

18   party.

19             THE COURT:  We can get there, that's fine, but

20   first you threw maritime law at me.

21             MR. SIMMS:  Sure.

22             THE COURT:  I'm not an expert on maritime law.

23   I want to know what authority I look to that says if -- I

24   understand you don't think you wrote this contract, if there

25   is this clear and unambiguous contract that outlined what I
```

1       just tried to outline, there is no ambiguity, whatsoever,

2       there is no argument for you, it says we will pay their

3       fees, okay?  It's that clear.  You're relying on maritime

4       law to say they still don't get their fees.  I want to know

5       what that maritime law is.

6              MR. SIMMS:  The maritime law is in -- this is at

7       page 5 of our memorandum opposing, and it was a bunch of

8       cases on this.  This cites most of them.  *J.P. Provos Mar.*.

9              THE COURT:  Can you tell me which docket number?

10      Do you have it in front of you.

11             MR. SIMMS:  This is 72, at page 5.  So here --

12             THE COURT:  72 at 5.  So like *J.P. Provos*.

13             MR. SIMMS:  Yes, then it cites the Eleventh

14      Circuit *Bradford* and Fifth Circuit.  And there was an

15      attorney fees clause in the United Ships service contract

16      and it was an in rem claimant.  There was no necessaries,

17      and they could not recover.

18             So our argument is there has to be proportionality.

19      And I don't think that the Court will ever find a situation

20      where a claimant -- what a claimant comes in to do is a

21      claimant says yes, you have arrested the ship in rem and in

22      admiralty law, ships are personified.  Of course, the ship

23      can't speak for itself so we're going to come in and speak

24      for the ship, but you won't find any case law that says that

25      because you are speaking for an in rem thing and you happen to

1    be a person you get shifted attorney fees.  There is no case

2    law that says that.  It has never come up before.  Because it,

3    at least in maritime law, it is just very clear.  Attorney

4    fees aren't shifted in complete in rem cases unless there is

5    a Rule 11 problem or something like that, but then you're

6    talking about the lawyers paying the attorney fees but that's,

7    we're not there.

8              So that is the support for our argument that on

9    top of.  Sithonia saying we're not a party, ship is not a

10   party.  There is no prevailing party fees.  But the Court

11   doesn't have to get there, okay?  Because Sithonia decided

12   that it was going to push the issue of compulsory counterclaim

13   by bringing counts that aren't valid, that they can't prevail

14   on.  If they had simply waited until the end of the case,

15   winning on the part they have won on and made a 54(d)

16   motion, they would have been the prevailing party for that.

17             THE COURT:  Is it too late for them to file that

18   motion now that you say they should have filed?

19             MR. SIMMS:  Yes, because they brought

20   counterclaims.  They claimed that they --

21             THE COURT:  What prevents or would make it an

22   abuse of discretion for me to say, okay, I'm finally

23   convinced by Praxis, now file a 54 motion.  Why shouldn't I

24   just let them do that if you are right?

25             MR. SIMMS:  Because they didn't prevail.

1    Because Praxis, because they came in and they brought counts

2    that could not have succeeded in the first place.

3              THE COURT:  On the prevailing party issue, is

4    there some reason I shouldn't say, all right.  I mean all of

5    this, I understand you think I got the security wrong, but I

6    did what I did.  Even if I were persuaded today I was wrong,

7    we know that they prevailed on your claim.  What is to stop

8    me or why shouldn't I say, okay, go ahead, file your Rule 54

9    motion.  I'm not getting rid -- I'm not letting the security

10   go.  We'll figure out what your fees are, and then you will

11   collect them for the security, and then we'll move on.  Why

12   shouldn't I do that?

13             MR. SIMMS:  Well, because they are the

14   prevailing party.  If they had just waited until the end of

15   the case and not made Praxis put up security, Praxis has had

16   $120,000 siting out there that shouldn't have gone out there

17   in the first place.

18             THE COURT:  You said something when you got up,

19   this is not a breach of contract claim.  Your claim is what

20   I thought you were talking about.

21             MR. SIMMS:  No, no.

22             THE COURT:  Your claim was a breach of contract

23   claim.

24             MR. SIMMS:  It's a maritime lien for a provision

25   of necessaries that is in personam against the debt

1    charterer who has long since gone in rem against the ship.

2    It's a breach of contract maritime lien claim.

3              THE COURT:  And you lost.

4              MR. SIMMS:  Not on the question of breach of

5    contract or even on the question of whether we had a

6    maritime lien, which Sithonia argued strongly against.  The

7    smallest part of their argument was the one they won on,

8    which was about the security in Brazil.

9              THE COURT:  So the whole action started, you

10   wanted security.  It's, you're attacking them for wanting

11   security.  I'm having a hard time following that.

12             MR. SIMMS:  Very different.  Very different,

13   Your Honor.  Praxis, as the Court held, has a maritime lien

14   against this ship in rem.  In rem.  No question about it.

15             Applying U.S. maritime lien law, it's a classic

16   maritime lien in rem against the ship for which Rule C is

17   completely clear that Praxis gets security.  And then the

18   Court said:  But you already got security.  It was posted in

19   Brazil.

20             Now, setting aside the question that Brazil

21   court released that security, that is a very different thing

22   than a compulsory counterclaim under Rule C(9) where you

23   have to have damages for breach of contract or something

24   else arising out of the contract -- arising out of the

25   claim, sorry, that was made in rem.  They don't arise out of

```
1    the contract.   There were no damages.   There was no
2    counterclaim.
3              THE COURT:   What I meant to focus on, you
4    suggest there is something awry in their desire to have
5    security, but that seems ironic when I don't think we would
6    even be here if you didn't want security.
7              MR. SIMMS:   Your Honor, the rules don't provide
8    for that.   Here is the reason.
9              THE COURT:   That is a different argument.   But
10   you are saying tail wags the dog and, you know, I shouldn't
11   really be fooled by this, but the whole thing is about you
12   are trying to collect a judgment.   They think they're going
13   to have a judgment they want to collect.   Is there something
14   wrong about what they're --
15             MR. SIMMS:   Yes.
16             THE COURT:   In that sort of sense?
17             MR. SIMMS:   Yes, Your Honor.   We're talking
18   about two completely different things.   When the ship comes
19   in, we are enforcing a maritime lien, just as you are
20   foreclosing on a house mortgage, okay?
21             So the ship's jurisdiction -- the Court's
22   jurisdiction over the ship is in rem.   Either the ship on
23   sail pays for the maritime lien or the security substituting
24   for the ship pays for the maritime lien.   Classic in rem
25   maritime lien.
```

1              Security for attorney fees, there is no

2    provision for that under Rule C(6), under Rule E, under any

3    of the supplemental rules.  It's not there.  It's not there.

4              Unless there is a claim arising out of the

5    contract, a real claim, not a might of claim.  Not a we

6    might have a judgment claim.  There is no right in rem which

7    the other side had back.  There is no right against Praxis

8    in personam, which they had at the time they brought the

9    counterclaim.

10             You know, imagine if somebody could come into

11   the court and say, well, I think he is going to hit me in

12   the face, and I'm pretty sure I'm going to have damages, so

13   I want you to give me security for that or make him, you

14   know, his insurance company show up or something like that

15   because if he hits me in the face, I'm going to have a

16   problem.  That is not a cause of action.

17             THE COURT:  Right.  But in this case, they

18   already, the litigation is ongoing in Brazil.  It's not like

19   they're just, you know, saying wait because something may

20   happen in Brazil.  It's already well underway.

21             MR. SIMMS:  True, but it's not done yet.  And we

22   heard that.  It's not done yet.  It's still on appeal.  We

23   don't know what is going to happen at the end and that is

24   what we heard.  We're not done yet.  The Court has to wait,

25   but there is no right to security in the first place.  If

1    there was a right to security, let's go back to Brazil.  Why

2    hasn't there been any countersecurity put up?  If there

3    really was, under Brazilian law, a matter of Brazilian law

4    that attorney fees are damages, why hasn't the Brazilian

5    court required security to be put up there?  It never did,

6    because there isn't.

7              THE COURT:  What is your feeling about

8    interlocutory appeal if I don't close this case and enter a

9    final judgment on everything?

10              MR. SIMMS:  Well, there are things that could

11   be good about that and things that are not so good.  One of

12   the things that is good about it is we get the very narrow

13   decision decided, but then we're back before your Honor on

14   a pretty clear fundamental question of whether or not there

15   are counterclaims for, let's talk about the Brazil

16   litigation.

17              They're asking the Court to enforce a foreign

18   judgment, which is not a foreign judgment, which is not

19   ready to be enforced.  Can that happen here?  Let's say that

20   was a case standing in isolation and the plaintiff files and

21   says I have, I have filed suit in outer Mongolia, and outer

22   Mongolian courts, they take awhile but I think I'm going to

23   win.  So I want you to give me security for that, so I want

24   a prejudgment attachment to support that suit.

25              You can't get it.  It's not a judgment that can

1    be enforced.  So as far as interlocutory appeal goes, I

2    think, yes, Praxis would like to have that narrow issue

3    decided, but we're still back in the same place.  And then

4    we're back up again on the question of whether there could

5    have been that security held in the first place.  So the

6    whole case should go up at this point or be finished at this

7    point.

8                    THE COURT:  Anything else?

9                    MR. SIMMS:  No, sir.

10                    THE COURT:  Okay.  Thank you very much.

11                    Mr. O'Donovan, do you want to come back?

12                    MR. O'DONOVAN:  Thank you, Your Honor.

13                    This argument that one cannot obtain security in

14   a maritime case for a foreign proceeding where there has not

15   been a final judgment is frankly absurd.  It happens all the

16   time.

17                    If you look at Rule B and Rule C attachments in

18   this district, I know, I have handled them, Mr. Simms has

19   handled them.  There are many times when a ship comes into

20   this port and somebody arrests or attaches it because there

21   isn't foreign arbitration in London, and they want to get

22   security for the foreign arbitration in London or that

23   foreign suit in London or Italy or in Brazil or in Panama.

24   That is the purpose of Rules B and C.  That is what the

25   purpose is for, so you can obtain security when the ship

1    comes here or there are assets within this court that can

2    then be used at a later time when that foreign court or

3    arbitration renders judgment.  You have security here.  It

4    is important.  It happens all the time.

5             Mr. Simms made the comment there has been no

6    statement about what Brazilian law is and whether or not we

7    would be entitled to fees and costs in Brazil.

8             Early on in this case, there was an affidavit

9    submitted from Dr. Battista who is the lawyer for Pebble

10   Beach in Brazil, and that affidavit sets out Brazilian law

11   plus the amounts that -- this was back in the days when we

12   were fighting countersecurity.  That affidavit sets out

13   exactly what is being claimed in Brazil, what the Brazilian

14   -- what his understanding of what the Brazilian courts will

15   do.  And I had referred to that in our motion, and I can

16   certainly -- off the top of my head I can't tell you what

17   that document is, Judge, but I know it is in the record.

18            So I know there is a statement about the Brazilian

19   law, and the Brazilian law similar to English law provides

20   attorney fees and costs.  And I believe there is another

21   doctrine under Brazilian law, which I will now butcher the

22   pronunciation of, which is circumventio (phonetic), which

23   is another type of damages that the defendant, assuming we

24   prevail in Brazil, would be awarded as a standard part of

25   Brazilian law.

1    THE COURT:  You don't contend, though, that fees

2  have been assessed already and that you have been awarded

3  them?

4    MR. O'DONOVAN:  It's my understanding, Judge,

5  that there have been -- I don't know that they have actually

6  been finally assessed.  I know there is no final judgment.

7  I believe there may have been a preliminary assessment, but

8  because the case is still ongoing, they're obviously not

9  final.

10    The other point, Judge, the issues of

11  countersecurity and whether or not we were entitled to

12  countersecurity, not our counterclaims, not on the merits

13  but actually countersecurity, that issue was decided by this

14  court two years ago.  If Mr. Simms didn't like the ruling or

15  came up with this damages argument, that was the time that

16  he should have filed the motion for reconsideration and made

17  those arguments then, not now.  This is way down the road.

18  So that is an issue that has been ruled upon by this Court.

19    Your Honor, I had the same reaction when

20  Mr. Simms made the comment that this was not a breach of

21  contract case, which I believe he has now amended but I mean

22  it's very simple.  It's a four page complaint and there is

23  one count, and it is headed breach of maritime contract in

24  rem vessel.

25    I come back to the point that I made earlier,

1    which is now Mr. Simms wants us to go to Dubai.  What he

2    really wants you to do, Judge, is he wants you to release

3    the security, and then he is going to make us go to a third

4    country to try to recover for judgments, which we will, as

5    I understand it, likely get in Brazil a judgment for our

6    attorney fees here in the United States, which I believe

7    that we are entitled to, and now he wants us to go a third

8    country to try to enforce that.

9                Those are the only points I had, Judge.  Thank

10   you.

11               THE COURT:  I've got a couple other questions

12   for you.

13               MR. O'DONOVAN:  Sure.

14               THE COURT:  First, help me with this *J.P. Provos*

15   case.

16               MR. O'DONOVAN:  Sure.

17               THE COURT:  Docket 72 at page 5.  And the larger

18   point, as I understand it, is Mr. Simms' argument is, even

19   if I could craft of the most clear and unambiguous terms

20   and conditions that Praxis wrote up that says, let's say, my

21   name, finding Mr. O'Donovan's client on, you know, in the

22   District of Delaware gets their attorney fees.  It couldn't

23   be clearer.  He says that is not enforceable under maritime

24   law in the context of this case.  Is that true?

25               MR. O'DONOVAN:  Judge, no, I don't believe that

1   is true.  I believe what is true, as I said earlier, is

2   that there is no maritime lien for attorney fees.  But for

3   countersecurity and for counterclaims, we don't need a

4   maritime lien.

5           Once Mr. Simms filed his Rule C arrest of the

6   ship for which he needed a maritime lien, under the

7   countersecurity rules, we are required, we are permitted to

8   make counterclaims for claims arising out of the same set

9   of facts, same legal arguments that are at issue in the

10  underlying case, but we do not need to have a maritime lien,

11  so that is why we are arguing for contractually based

12  attorney fees.  We're not arguing we have a maritime lien.

13  We're arguing that, as Your Honor pointed out, that is what

14  the contract says, and the contract is the breach -- is the

15  count in the complaint.

16          THE COURT:  Your view then is this *J.P. Provos*

17  case and any other authorities you are aware of, they don't

18  preclude you prevailing on a contract theory just because

19  it's tied up in a case that began with a maritime lien?

20          MR. O'DONOVAN:  That is correct.  That is my

21  argument.

22          THE COURT:  Can you remind me, and I'll check to

23  see if Mr. Simms agrees with these numbers, but remind me

24  because I didn't get chance to lok.  The amount of security,

25  the amount of countersecurity I ordered in this case?

1          MR. O'DONOVAN:  I believe the amount of

2   countersecurity is $50,000 for attorney fees in the Delaware

3   case, and about $89,000 for the countersecurity for Brazil.

4          THE COURT:  As you stand here today, and I know

5   you have asked for a chance to itemize your fees if I award

6   them, are they, you think, on the order of $50,000 for

7   Delaware and $89,000 for Brazil or are those numbers not --

8          MR. O'DONOVAN:  I believe in both cases, the

9   numbers are probably low.

10         THE COURT:  Significantly low, do you think?

11         MR. O'DONOVAN:  I don't know what the scenario

12  is in Brazil, Judge.  I wouldn't think those are terribly

13  much higher.  I would expect our fees are probably close to

14  double $50.

15         THE COURT:  Okay.

16         MR. O'DONOVAN:  I believe Mr. Simms' claim was

17  for $177, and I think security was $220; is that right?

18  Something like that.

19         MR. SIMMS:  120 percent or something like that.

20  110 percent.

21         MR. O'DONOVAN:  Yes.  So I believe that the

22  security that we originally posted originally threw an LOU

23  and then subsequently through a bond is in a range of $20 to

24  $30,000.

25         THE COURT:  All right.  Thank you.  That was all

1    my questions.

2                MR. O'DONOVAN:  Thank you.

3                THE COURT:  Is there anything else you want to

4    say, Mr. Simms?

5                MR. SIMMS:  No, sir.

6                THE COURT:  All right.  I will have something

7    more to say, but I need to go do a little bit more work

8    here.  You are free until 11:00 o'clock but be back here in

9    the courtroom at 11:00 o'clock.

10               (Recess taken.)

11               *     *     *

12               (Proceedings reconvened after recess.)

13               THE COURT:  Have a seat.

14               So I'm ready to give you my decision on the

15   motion.

16               I think the issues have been fleshed out in

17   series of briefs, and we had a long helpful discussion this

18   morning, and the case is somewhat old, and it's time for me

19   to make these decisions.

20               So with respect to plaintiff's Praxis's

21   motion for summary judgment, it's granted with respect to

22   counterclaim 1, the one regarding Brazilian fees and it's

23   denied with respect to counterclaim 2 regarding the U.S.

24   fees.

25               The defendant's motion for partial summary

1    judgment is granted because it's directed to only

2    counterclaim 2 regarding U.S. fees.

3             Let me try to explain how I reached these

4    decisions.  The legal standards of course for Rule 56 are

5    well settled.  There is no dispute about the Rule 56 standard.

6             I want to talk about the U.S. fees counterclaim

7    first.

8             Under Praxis' terms and conditions, which I

9    might refer to as the contract, pursuant to Section 22.04,

10   defendant is the prevailing party in "any proceeding of any

11   nature."  Specifically, this proceeding, the litigation that

12   Praxis filed in the District of Delaware against the Pebble

13   Beach in rem, I believe the terms and conditions are clear

14   and unambiguous on this point.

15            Under 22.03, Praxis gave itself the right to

16   proceed against "the buyer and/or the vessel and/or any

17   other party in such jurisdiction worldwide as the seller in

18   its sole discretion sees fit."

19            Here, Praxis, as the seller, saw fit to file

20   this litigation in this court against the vessel.

21            22.04.  I want to read the whole thing.

22            "If any proceeding of any nature whatsoever is

23   instituted under clause 20.2 or 20.3 above" -- and we all

24   agree that is a typo now -- "in connection with any

25   controversy arising out of these conditions or the agreement

1    or to interpret or to enforce any rights under the

2    agreement, the prevailing party shall have the right to

3    recover from the losing party its reasonable costs and

4    attorney fees incurred in such proceeding."

5              So when put 22.03 and 22.04 together, Praxis

6    is the losing party.  Praxis brought a single breach of

7    contract claim against the vessel, and based on my earlier

8    summary judgment rulings, Praxis did not prevail.  Indeed,

9    they lost.  They did not recover any of the money that they

10   sought to recover.

11             Who is the prevailing party?  The vessel, the

12   Pebble Beach is the prevailing party.  So it "shall have the

13   right to recover from Praxis its reasonable costs and

14   attorney fees incurred in such proceeding."

15             This is correct even if the vessel is not

16   viewed as a party to the contract as the Court reads 22.04's

17   reference to "the prevailing party" to be the prevailing

18   party in the litigation instituted by Praxis.  It was

19   instituted by Praxis against the vessel.  And anyway, Praxis

20   could have chosen under 22.03 to have instituted against

21   "any other party."

22             I find that all of this is clear and unambiguous,

23   but even if one were to say that some of it is ambiguous, the

24   ambiguity of the contract would be construed against Praxis as

25   the drafter of the contract.

1            Let me address some of the arguments that Praxis

2    has made in opposition to this conclusion.

3            First, Praxis argues that the defendant is not

4    the prevailing party.

5            That's wrong.  The defendant won on the only

6    claim brought by the plaintiff Praxis.

7            Defendant is also winning on one of its

8    counterclaims today, although it is losing on the other.

9    But what is important is that in the proceeding instituted

10   under the terms and conditions by Praxis, defendant is the

11   prevailing party.

12           Praxis argues that the attorneys fees aren't

13   damages and the counterclaims aren't really claims.  I

14   disagree.  The counterclaims are compulsory counterclaims.

15           Consistent with the analysis in the *Leopard*

16   *Marine* decision in New York, the defendant here had an

17   opportunity to enforce provisions of the contract under

18   which Praxis instituted the lawsuit.  22.03 and 22.04 are

19   such provisions.

20           As in *Leopard Marine*, this Court recognizes "a

21   foreseeable likelihood that a vessel owner, when subjected

22   to a maritime lien against its vessel, will seek to enforce

23   provisions of the agreement that gave rise to that dispute."

24   That is what has happened here.

25           Praxis also argues some aspect of maritime law

1   precludes recovery by defendant of attorney fees even if a

2   contract clearly and unambiguously gives rise to recovery

3   of such fees.  The Court has not pointed to any such

4   authority.

5           We took another look at the *J.P. Provos* case

6   during the break and the Eleventh Circuit case cited in it.

7   It all relates to a maritime lien, it does not relate to a

8   contractual claim.  The defendant is not seeking to recover

9   attorney fees as part of a maritime lien.

10          Praxis argues that instead of counterclaims,

11  defendant should have waited until the end of the case to

12  file a Rule 54 motion to recover its attorney fees.  The

13  Court is not persuaded that this was the only manner in

14  which defendant had to proceed.  Instead, as I have already

15  said, the Court agrees with defendant that their counter

16  claims were compulsory counterclaims.

17          Also, had defendant pursued the course of action

18  that plaintiff suggests, defendant would not have been able

19  to obtain countersecurity.  Now, the Court understands that

20  the plaintiff believes it was wrong for the Court to grant

21  countersecurity, but the Court made that decision based on

22  what it thought it was correct at that time and still thinks

23  that that is correct.

24          So I have considered all the arguments that

25  Praxis made and tried to group them together in a way that

1    is fair to what was argued, and I find none of them

2    meritorious, so that is my decision with respect to the U.S.

3    fees.

4              Turning to the Brazilian fees.

5              The Court is granting Praxis's motion for

6    summary judgment on defendant's counterclaim directed to

7    the recovery of Brazilian fees.

8              Praxis's motion for summary judgment put the

9    burden on defendant to identify a genuine dispute of

10   material fact or to explain how Praxis is not entitled to

11   judgment as a matter of law.

12             Defendant has failed to meet its burden.  It is

13   undisputed that defendant has not obtained a final judgment

14   in Brazil.  It has no judgment.  That is, defendant has no

15   judgment to enforce in this court.

16             That's admitted, of course, today.  In argument,

17   it is plain from the briefing which consistently and only

18   talks about the numerous contingencies between today and a

19   final Brazilian judgment.  It talks of things like defendant's

20   errant confidence that they will eventually get a judgment

21   and maybe Praxis won't pay it.

22             In these circumstances, when we reached the

23   point of summary judgment which puts a burden on defendant

24   to come forward, as I have said, these contingencies defeat

25   the defendant's counterclaim.

1          At this point in this case, there is not enough

2     here or any meritorious reason to keep this counterclaim

3     open for what would be an indefinite period.  Defendant's

4     only real argument against this conclusion is that it will

5     lose the countersecurity the Court has required Praxis to

6     deposit in connection with the Brazilian fees.

7          While this may be an unfortunate outcome for

8     defendant, there is no longer any valid reason to keep

9     the countersecurity in place.  Assuming defendant gets a

10    judgment in Brazil, defendant will have all the same

11    enforcement rights around the world that it has today.

12         So that's the decision with respect to the

13    Brazilian fees counterclaim.

14         I direct that the parties meet and confer about

15    the amount of the defendant's attorney fees incurred in this

16    action where I granted summary judgment for the defendant.

17    It's my hope you will be able to work out an agreement on

18    that amount.  But if you can't -- if you can, then submit a

19    proposed order ordering that amount.  If you can't, then

20    submit an order that gives you a very short amount of time

21    to file some short briefs so that I can resolve whatever

22    your disputes are.

23         I also want a proposed order that will direct

24    the Clerk's Office ultimately what to do with the security

25    of the countersecurity in light of my decisions.  That

1    probably needs to await decision about the amount of

2    attorney fees that I have awarded, but the intent here is

3    that in the very near future, we'll resolve any remaining

4    disputes you would have of the dollar figure for U.S.

5    attorney's fees, and money will go where it needs to go and

6    will leave the Court, and we'll have a final judgment, and

7    you can all do whatever you have the right to do at that

8    point.

9             Any questions about that?

10            MR. SIMMS:  So, Your Honor, if we're parsing out

11   attorney fees then, are they attorney fees necessary to

12   prevail against Praxis on the maritime lien claim?  Are they

13   attorney fees in addition to prevail on the U.S. attorney's

14   fees claim?  And does it exclude attorney fees spent to

15   press the Brazilian claim?

16            THE COURT:  You are going to meet and confer on

17   issues like this.  Those are not issue that are fully

18   briefed in front of me right now.  My hope remains that you

19   will work that all out.

20            If you don't, you will be back here, and we'll

21   be arguing more of it, but I can at least say it's not

22   obvious, in fact, in general, and I'm more familiar with

23   patent cases, generally to the contrary, I want to say it

24   is not obvious that the fees defendant keeps running up

25   litigating in my court are not compensable.  That is, in a

1    patent case, they're typically compensable when we award

2    attorney fees in an exceptional case in patent litigation.

3    Typically, all the fees incurred with litigating, whether

4    the case is exceptional, and disputes over how much money

5    the prevailing party should get, are usually at the end of

6    the day all recovered by the prevailing party.

7              So I wouldn't want you to think that there is no

8    realistic chance that if you all keep fighting that you

9    won't end up at the end of the day having to pay for all of

10   that on both sides.  So I'm not making a decision on that, I

11   don't have that dispute in front of me, but I wouldn't want

12   you to think that is not at all likely.

13             Anything else?

14             MR. SIMMS:  No, sir.

15             THE COURT:  Okay.  Any questions?

16             MR. O'DONOVAN:  Nothing.

17             THE COURT:  All right.  Well, how soon do you

18   think you all can get back to with me with something that is

19   telling me whether there are disputes or whether I should

20   be deciding something?

21             MR. SIMMS:  That I think falls in your court, so

22   ...

23             MR. O'DONOVAN:  A couple of weeks?

24             MR. SIMMS:  Yes.

25             THE COURT:  You say two weeks from today?

1                    MR. O'DONOVAN:  Um-hmm.

2                    THE COURT:  Well, we'll enter an oral order that

3        requires you to get something to us two weeks from today.

4                    Thank you for the helpful argument.  We'll be in

5        recess.

6                    (Oral argument hearing ends at 11:30 a.m.)

7

8             I hereby certify the foregoing is a true and accurate
         transcript from my stenographic notes in the proceeding.

9

10                         /s/ Brian P. Gaffigan
                          Official Court Reporter
11                         U.S. District Court

12

13

14

15

16

17

18

19

20

21

22

23

24

25